UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DON SCOTT, individually and derivatively on behalf of OLD COUNTY SENIOR LIVING, LLC, a Connecticut Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>OLD COUNTY SENIOR LIVING, LLC, a Connecticut Limited Liability Company, Michael F. McCarthy, individually, Frederick J. Mielke, individually, and Robert Kelley, individually<br><br>Defendants. | No. _____<br><br><br><br><br><br>DECEMBER 29, 2022 |

**COMPLAINT**

DON SCOTT, individually, ("Don") directly and derivatively on behalf of OLD COUNTY SENIOR LIVING, LLC, a Connecticut Limited Liability Company, ("Old County"), by and through undersigned counsel, pursuant to Chapter 613a and the Connecticut Limited Liability Company Act, and other applicable grounds, and directly sues OLD COUNTY, and derivatively on behalf of Old County sues Michael F. McCarthy, individually (McCarthy), Frederick J. Mielke, individually (Mielke), and Robert Kelley, individually (Kelley) and further states:

**ALLEGATIONS COMMON TO ALL COUNTS**

**The Parties**

1.  Don is a citizen of the State of Florida and is otherwise *sui juris*. At all times material hereto, Don is and remains a member in Old County.

1

2. Old County is a Connecticut limited liability company, authorized to do and doing business in the State of Connecticut. Old County is a member managed entity pursuant to its written operating agreement. ("Operating Agreement", Ex. A, §5.1). Old County has two classes of members, the Class A members consisting of the McCarthy, Mielk, Kelley and Don, and the Class B members.

3. McCarthy is a citizen of the state of Massachusetts and is otherwise sui juris. At all times material hereto, McCarthy was a managing member of Old County (jointly with Mielke, the "Managers").

4. Mielke is a citizen of the state of Massachusetts and is otherwise sui juris. At all times material hereto, McCarthy was a managing member of Old County. (jointly with McCarthy, the "Managers").

5. Kelley is a citizen of the state of Massachusetts and is otherwise sui juris. At all times material hereto, Kelley was a Class A member of Old County.

## Jurisdiction and Venue

6. This Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and the parties are citizens of different states.

7. Venue is proper herein pursuant to 28 U.S.C. § 1391 as Old County is a Connecticut limited liability company, and the Operating Agreement exclusively identifies Connecticut as having venue. (Ex. A. §14.8).

## Conditions Precedent

8. All conditions precedent have been met, as demand for inspection of corporate records has occurred (Ex. B) and Old County continues to withhold vital corporate transactional records.

9. Demand upon Old County to commence an action against its managers and Kelley would be futile as the Managers orchestrated the acts complained of, secreted the acts, and would not commence an action against themselves; and prior demand for records resulted in delays and incomplete compliance with Don's proper demands. In response to the demand for records, which gave the Managers the opportunity to reexamine the acts complained of considering a potential lawsuit and take corrective action, the Managers and Kelley instead issued Don a lengthy response denying access and threatening cross litigation, and Don has no reason to believe Old County will commence a derivative claim.

10. Don retained the undersigned counsel and agree to pay a reasonable attorney's fee for the services incurred herein. Don is entitled to reimbursement of the fees and costs incurred pursuant to Conn. Gen. Stat. §34-255g of the Connecticut Limited Liability Company Act.

11. Don brings his direct action against Old County for corporate records, not as a derivative action. Connecticut General Statutes §34-271; *see also, Benjamin v. Island Management, LLC,* 341 Conn. 189, n. 1 (2021).

12. Don brings his derivative action against McCarthy and Mielke as managers, and Kelley, as recovery is not direct but for the membership.

### The Parties' History, Old County's Genesis, Business Operations and Sale

13. The Class A members of Old County formed the entity as a business venture on April 7, 2015, for the purpose of construction (ground up development) and operation of a senior independent living facility together with assisted living and a memory care facility. Old County has two classes of members, Class A and Class B; Old County assigned management to Michael F. McCarthy and Frederick J. Mielke. The Assisted Living Community is to be constructed and operated on a parcel of land fully permitted for construction of a 112 unit assisted living facility,

which land together with all improvements, licenses, and permits, and other appurtenances, described as Lot 2 in a Subdivision Approved on October 15, 2002, for HML Old County Development, LLC, Old County Road, Windsor Locks, Connecticut, (the "Land"), having a street address of 550 Old County Road, Windsor Locks, Connecticut 06096, and which land shall be acquired by the Class A Members from M & L Development Corporation a Connecticut Corporation, and contributed by the Class A members to the Company.

14. McCarthy and Don previously acquired land, built a senior independent living facility and sold the project for profit. The experience was a positive one, and the experience guided their intentions with Old County. Due to their prior success and as Old County was in constructed and became operational, Don, on several occasions, inquired of McCarthy whether they wished to pursue additional ventures; each time, McCarthy declined.

15. Once construction was complete and licenses were obtained, in October 2016, Old County commenced operations. Initially, Old County's operations were managed by an outside management company.

16. McCarthy approached Don and advised he, and the other Class A members, believed Old County's management company, Kaplan, was not properly performing its management services. McCarthy proposed to Don that Old County should jettison the management company and manage the facility itself. McCarthy stated that Old County would handle the management operations itself, and no third party company was required.

17. Unbeknownst to Don and the Class B members, the Managers, together with Kelley formed Optimus Senior Management, LLC, a Massachusetts entity ("Optimus") for the express purpose of managing adult senior living facilities.

18. Unbeknownst to Don and the Class B members, in October 2017, Old County and

Optimus entered into a written management agreement. (Ex. B). Optimus later changed its name to Everbrook Senior Living, LLC. (Everbrook).

19. As had been the intention from the outset, the Class A Members agreed to commence the process of offering Old County for sale as the pandemic commenced at the end of first quarter/beginning of the second quarter, 2020. The Managers interview several brokers and retained Cushman & Wakefield.

20. Unbeknownst to Don and the Class B members, the Managers retained Cushman Wakefield to market Old County with another property unrelated to Old County, but owned by Kelley, McCarthy, and Mielke, Hebron Senior Living, LLC, d/b/a Colebrook Village of Hebron ("Hebron").

21. Throughout the marketing process, the Managers provided periodic updates with information concerning the potential sale of Old County. At no time did the Managers disclose that Old County was being marketed in tandem with Hebron. At no time during the marketing process did the managers disclose that the Managers were retaining their Management Agreement through the purchase

22. On October 14, 2021, Old County and Hebron, as Sellers, and WOJV-ESL Property Venture, LLC, as Buyer, entered into an Asset Purchase Agreement ("APA"). (Ex. C). The Managers advised Don and the Class B members that the APA was the best purchase price.

23. At no time did the Managers disclose that the Old County was being sold in tandem with Hebron. At no time during the disclosure of the APA did the managers disclose that the Managers were retaining their Management Agreement through the purchase.

24. On December 20, 2021 WOJV Windsor Locks, LLC, and WOJV Hebron, LLC, closed on their purchase of Old County and Hebron.

25. On June 14, 2022, Don mistakenly received an email from Old County's bookkeeper disclosing McCarthy's interests in other adult center retirement communities.

26. After Don's informal request was ignored, Don's counsel issued a formal demand to the Managers, Class A Members, and its accounting professionals for inspection of records on July 28, 2022 under Connecticut Statute §34-255i ("Demand"). (Ex. D). The Demand Sought:

> 1. All closing documents relating the APA, and all related materials, including all prior drafts;
> 2. All loan documents, including those relating to and identified, in the Uniform Commercial Code Financing Statement recorded at Book 514, commencing at page 285, and all related materials, including all prior drafts;
> 3. That certain Management Agreement, dated December 20, 2021 between WOJV Windsor Locks, LLC, and Everbrook Senior Living, LLC, and all related materials, including all prior drafts;
> 4. All communications relating to the negotiation of the APA;
> 5. All appraisals relating to the entities identified on Exhibit A of the APA, and how the purchase price was allocated between the Sellers as defined in the APA;
> 6. All prior offers relating to Old County Senior Living, LLC;
> 7. All communications with all brokers;
> 8. All communications relating to the Right of First Refusal in the APA;
> 9. All communications or related materials relating to the valuation of the Management Agreement referenced in paragraph 3 *infra*;
> 10. The management agreement(s) by and between Old County Senior Living, LLC and Everbrook Senior Living, LLC;
> 11. The general ledgers for Old County Senior Living, LLC, for the past five years;
> 12. All management communications to the Old County Senior Living, LLC members relating to any disclosure of the affiliation between Everbrook Senior Living, LLC and the managers of Old County Senior Living, LLC;
> 13. All management communications to the Old County Senior Living, LLC members relating to any disclosure of Everbrook Senior Living, LLC management contract referenced in paragraph 3 *infra* with the Buyer in the APA; and
> 14. All management communications to the Old County Senior Living, LLC members relating to any disclosure of Everbrook Senior Living, LLC was retaining a first right of refusal to purchase

Old County Senior Living, LLC upon the occurrence of certain events as defined therein.

27. The Demand identified its purpose as follows:

The purpose of this request is to determine whether the purchase price of Old County Senior Living, LLC reflects its true value, or whether it was undervalued due to: its sale in tandem with another unrelated facility; Everbrook Senior Living, LLC's retention of management rights; Everbrook Senior Living, LLC's retention of a right of first refusal; or other factors.

28. The Mangers initially sought an enlargement of time to comply, then partially complied, and announced their refusal to turn over various records. Other areas of the Demand were simply ignored. In correspondence dated August 18, 2022 (Ex. E), Everbrook declined to turn over then entire closing package together with all communications with third parties, including its brokers and failed bidders based upon a claim of 'confidentiality', and declined to provide any confidentiality agreement or basis for denying a member of the Seller from reviewing the records.

**COUNT I: (Right to Inspection Pursuant to Conn. Gen. Stat. § 34-255i)**

29. Don adopts and realleges the allegations in paragraphs 1-28 as if fully set forth herein.

30. Don is a member of a Connecticut limited liability company exercising his statutory inspection rights under Conn. Gen. Stat. § 34-255i. Don made Demand on July 28, 2022. (Ex. D)

31. Don's Demand (Ex. D) sought information relating to the sale of the business and how the sale was affected by selling the business with another unrelated business; selling the business while retaining management rights; and selling the business while retaining a right of first refusal.

32. Don's Demand (Ex. D) sought information (detailed in paragraph 21 above) relating his interest in maximizing the value of his interest in Old County to the valuation and negotiation of the sale of the business and how the valuation related to: selling the business with another unrelated business; selling the business while retaining management rights; and selling the business while retaining a right of first refusal.

33. Don's Demand (Ex. D) described with reasonable particularity the information sought and disclosed the purpose for seeking the information.

34. Each of the items identified in Don's Demand, as identified in paragraph 21 above, related to Don's proper purpose identified in paragraph 22 above.

35. Old County failed to comply with the Demand and failed to turn over all records relating to the sale of Old County as identified in the Demand, detailed in paragraph 21 above.

**WHEREFORE**, Don demands this Court order Old County comply with the Demand, turn over all records relating to the valuation and sale of Old County, tax attorneys' fees and costs, and grant all further relief this Court deems appropriate.

**COUNT II: (Derivative Claim for Breach of Fiduciary Duty Against the Managers)**

36. Don adopts and realleges the allegations in paragraphs 1-28 as if fully set forth herein.

37. As the managing members, the Managers had a relationship with Don and the other members which gave rise to a fiduciary duty. The Managers had (and have) an obligation to act in the best interests of the members, and to act in good faith in any matter relating to Don and the other members.

38. The Managers advanced their own interests to the detriment of Don and the other members by:

  a. Entering into a management agreement and diverting operating revenues to their exclusive benefit and the exclusion of Don and the members.

  b. Selling Old County with an unrelated entity and allocating the purchase price equally among the units when Old County was worth more and failing to disclose this to Don and the members.

  c. Retaining its management agreement as part of its sale of Old County, thereby retaining operating revenues for themselves, and failing to separate that right from the purchase price.

39. As a result of the Managers' breach of their fiduciary duty Old County was damaged and did not receive the full value upon the sale of its assets.

40. Old County's damages were caused by the Managers' conduct.

41. The Managers did not make a free and frank disclosure of all relevant information to Don and the members; the Managers never disclosed their conduct relating to the actions described in paragraph 38 *supra*. The Managers have not shown the benefit to Old County from their actions described in paragraph 38 *supra*.

42. Don, on behalf of Old County, seeks Punitive Damages consisting of attorney's fees and Court costs.

Wherefore, Don demands judgment against McCarthy and Mielke for damages, punitive damages, and any further relief this Court deems appropriate.

**COUNT III: (Derivative Claim for Usurpation of Corporate Opportunities)**

43. Don adopts and realleges the allegations in paragraphs 1-28 as if fully set forth herein.

44. As the managing members, the Managers had a relationship with Don and the other members which gave rise to a fiduciary duty. Kelley, as a Class A member, acting in conjunction with the Managers, had superior knowledge to Don and the other members, and at various times, served as Old County's counsel.

45. McCarthy represented to Don that Old County was overpaying for its manager services and that Old County could save funds by managing itself without a third party manager. The opportunity to manage Old County was a corporate opportunity belonging to Old County. Old County had an interest in minimizing its management expenses.

46. The Managers and Kelley seized the opportunity for themselves by engaging Everbrook to manage Old County, rather than Old County simply managing the business themselves.

47. Rather than providing Old County with lower expenses, the contract with Everbrook merely diverted Old County revenues to the managers and Kelley.

48. The Managers and Kelley never disclosed to Don or the Members the existence of Everbrook and their ownership in Everbrook.

49. The Managers and Kelley did not disclose to Don and the members that they were managing Old County for a fee similar to the terminated managing entity.

50. The Managers and Kelley never disclosed their interest in Everbrook to Don or the other members.

51. The Managers and Kelley did not offer the corporate opportunity to Old County, Don or the members, and actively secreted their contract from Don and the members.

52. Don, on behalf of Old County, seeks Punitive Damages consisting of attorney's fees and Court costs.

Wherefore, Don demands judgment against Kelley, McCarthy, and Mielke for damages, punitive damages, and any further relief this Court deems appropriate.

Dated: December 29, 2022

                  Respectfully submitted,

                  **Plaintiff,**

                  **DON SCOTT, individually and derivatively on behalf of OLD COUNTY SENIOR LIVING, LLC, a Connecticut Limited Liability Company**

By: /s/ Jonathan Shapiro ct24075
Jonathan Shapiro of
Aeton Law Partners LLP
311 Centerpoint Drive
Middletown, CT 06475
T: 860-724-2160
F: 860-724-2161
jms@aetonlaw.com
His Their Attorneys


KEITH T. GRUMER, ESQ.
(to be admitted pro hac vice)
Florida Bar No. 504416
GRUMER LAW, P.A.
*Attorneys for Plaintiff*
2482 Eagle Watch Court
Weston, Florida 33327
Tel: 954-303-3000
Primary E-mail: kgrumer@grumerlaw.com
Secondary E-mail: slopez@grumerlaw.com
eservice@grumerlaw.com